IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SUSAN BREWER,<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>        Defendant. | **REPORT AND RECOMMENDATION**<br><br><br>Case No. 2:12-cv-00561-DN-EJF<br><br>District Judge David Nuffer<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Susan Brewer filed this action asking the Court to reverse the final agency decision denying her Disability Insurance Benefits ("DIB") and denying her Disabled Widow's Benefits ("DWB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401–434 (2010).[1] The Administrative Law Judge ("ALJ") determined Ms. Brewer did not meet the eligibility standard for benefits because she "has not been under a disability within the meaning of the Social Security Act at any time through the date of this decision." (Admin. R. Doc. 33, certified copy tr. of R. of admin. proceedings: Susan Brewer (hereinafter "Tr. __").)  Having carefully considered the complete record in this matter and the parties' Memoranda,[2] this Court recommends that the District Court AFFIRM the Commissioner's decision that Ms. Brewer does not qualify for Social Security benefits.

---

[1] On June 15, 2012, pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1), Judge David Nuffer referred the case to Magistrate Judge Evelyn J. Furse for report and recommendation on all dispositive matters.  (*See* ECF No. 6.)

[2] The Court decided it does not need oral argument and will determine the appeal on the basis of the written briefs submitted to the Court.  *See* DUCivR 7-1(f).

**FACTUAL AND PROCEDURAL HISTORY**

On September 25, 2008, Ms. Brewer protectively filed Title II applications for DIB and DWB. Both applications alleged a disability beginning on January 10, 2008. The Regional Commissioner denied the claim on April 27, 2009, and denied it again upon reconsideration on May 6, 2009. Ms. Brewer filed a written request for a hearing on June 10, 2009, which the ALJ held on July 23, 2010, in Salt Lake City, Utah. After this hearing, the ALJ issued a decision on September 20, 2010, ("Decision") finding Ms. Brewer did not qualify as disabled under the Social Security Act. Ms. Brewer requested the Appeals Council review the Decision on September 28, 2010. The Appeals Council denied the request for review on April 27, 2012, whereupon Ms. Brewer filed this civil action contesting the ALJ's decision on June 13, 2012.

## I. Medical History

Prior to January 10, 2008, Ms. Brewer reported knee pain on several occasions. She underwent arthroscopic, left-knee debridement surgery on January 12, 2007. (Tr. 369–71.) Alta View Hospital admitted the claimant, Ms. Brewer, on May 23, 2007. She reported clumsiness, paresthesias (a tingling, burning, or numbness of a person's skin), and coordination and ambulation problems in her left extremities. (Tr. 268.) A computed tomography ("CT") scan showed diffuse white-matter low attenuation, but no baseline image existed for comparison. (Tr. 271.) The radiologist conjectured that Ms. Brewer's symptoms could have resulted from either diffuse white-matter disease, small-vessel ischemic disease, or post-radiation changes. (Tr. 271.) On May 24, 2007, a magnetic resonance imaging ("MRI") scan, showed extensive but diffuse white-matter disease and a small area of apparent acute ischemic change. (Tr. 276.) A neurologist, Dr. McDermott, diagnosed Ms. Brewer with an acute stroke, prescribed aspirin,

smoking cessation medication, and medication for hyperlipidemia, and then discharged her. (Tr. 263.)

Ms. Brewer continued to complain of worsening knee pain, and Dr. Hays, her family physician, referred her to Dr. Momberger, an orthopedic surgeon, to evaluate her for knee replacement surgery on her left knee. Dr. Momberger noted Ms. Brewer did not have a total loss of joint space in the knee, and injections had helped her in the past. He also noted that her pain complaints exceeded what one would expect based on the objective findings. Nonetheless, Dr. Momberger agreed to a left total knee arthroplasty on Ms. Brewer, which he performed in January 10, 2008. (Tr. 299–302.) Ms. Brewer suffered small strokes during her hospital stay that have not had a lasting impact. (Tr. 333–34.) By May 9, 2008, Dr. Momberger noted Ms. Brewer had no knee pain, even when climbing stairs, and encouraged her to exercise. (Tr. 374.)

Ms. Brewer saw Dr. Hays on July 8, 2008, to request a prescription refill and reported she had begun to smoke again. (Tr. 285.) He encouraged her to continue attempting to quit smoking. She refilled her medication for depression and reported this medication helped her to feel better. (Tr. 285.) She returned on March 6, 2009, when she reported being stressed and smoking again. Dr. Hays diagnosed her with hypertension, depressive disorder, and tobacco abuse. (Tr. 389–90.)

Dr. Ingebretsen saw Ms. Brewer on April 14, 2009, to perform a consultative physical assessment of her. He noted she walked easily and without a limp. She reported doing well since the knee surgery, with only some residual aching in both of her knees. Ms. Brewer reported she had stopped smoking and could live her life independently. She completed her own household chores. She experienced more fatigue than she had before but could still walk, even up steps. Most of Ms. Brewer's exam fell in the good or normal category, although she could

3

not squat or jump the average full range. (Tr. 307–310.) She saw Dr. Hays on September 25, 2009, and reported she had begun smoking a "markedly reduced" amount again. (Tr. 387.)

Ms. Brewer visited Dr. Momberger concerning her right knee on July 8, 2009. She reported a new onset of pain from her right knee to her ankle similar to what she had experienced in her left knee prior to surgery. The doctor diagnosed her condition as benign and found she had full motion in her leg. (Tr. 373.) Dr. Momberger recommended an injection and follow up as needed. (Tr. 373.) Evidence submitted to the Appeals Council shows Ms. Brewer had a right total knee arthroplasty on August 17, 2010. (Tr. 403–05.) Ms. Brewer did not submit any intervening records.

## II.     Work History

Prior to January 10, 2008, Ms. Brewer lists four jobs in her Work History Report: two separate periods of employment in retail positions with Nine West, a retail job with Liz Claiborne, and a cook/bartender job at Ruby View Golf Course. (Tr. 217.) A vocational expert testified at the ALJ hearing and determined Ms. Brewer did her lightest work working in retail at Nine West. (*See* Tr. 69.) Ms. Brewer reports working about four hours per day and only a few times per week, resulting in about thirty hours worked per month. (Tr. 50, 218.) Her main duties included straightening shoes, selling shoes, helping customers, and running reports on the cash registers. (Tr. 218.) She reports standing about two hours, walking three hours, and sitting one hour when she worked. She reports not having to climb, kneel, crouch, or crawl. She lifted up to ten pounds occasionally and five pounds frequently. (Tr. 218.)

Ms. Brewer reports she does most of her own housework, other than heavy lifting. She lives independently and cares for herself, as well as for a puppy. (Tr. 308.) She testified she keeps up with most of the housework and cooking, but she does sometimes call her daughter if

she needs to move furniture. (Tr. 67.) She can drive and estimates she could drive for two hours without stopping. (Tr. 63.) She has been on one flight since her first knee surgery, during which she needed to walk around about once every hour. (Tr. 64.)

### III. Disability Assessments

Dr. Burkett reviewed Ms. Brewer's medical records in order to determine her physical residual functional capacity ("RFC"). (*See* Tr. 316.) He found no manipulative, visual, communicative, or environmental limitations for Ms. Brewer during his physical RFC assessment. (Tr. 321–22.) He found some postural limitations, only allowing Ms. Brewer to balance, stoop, kneel, crouch, or crawl occasionally and never allowing her to climb. (Tr. 320.) He also found exertional limitations preventing Ms. Brewer from lifting more than ten pounds frequently or twenty pounds occasionally. She can walk, stand, or sit up to six hours in a work day with normal breaks. (Tr. 319.) Dr. Peterson, a consulting physician who reviewed Ms. Brewer's records, confirmed this assessment. (Tr. 368.)

At the hearing with the ALJ, Ms. Brewer testified she could stand for about fifteen to twenty minutes, sit for thirty minutes, and walk for fifteen minutes within four to six months of her left knee replacement. (Tr. 54–56.) She has previously controlled her pain using 800 milligrams of ibuprofen and continues to take ibuprofen but states it does not eliminate her pain. (Tr. 60–61.) She does not allege any neurological problems, but she continues to experience minor depression stemming from the death of her husband in 2005. (Tr. 57–60.) Her strokes have not had any lasting effects, beyond feeling fatigue. (Tr. 59–60.) Ms. Brewer states she does not bend her knees and only bends from the waist in order to avoid pain. (Tr. 65.)

**STANDARD OF REVIEW**

42 U.S.C. section 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the Court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted), but "review only the *sufficiency* of

the evidence." *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The Court need not accept the Commissioner's findings mechanically, but must "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the Court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## **ANALYSIS**

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750–53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The analysis evaluates whether:

> (1) The claimant presently engages in substantial gainful activity;
> (2) The claimant has a medically severe physical or mental impairment or impairments;
> (3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
> (4) The impairment prevents the claimant from performing his or her past work; and
> (5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

The ALJ evaluated Ms. Brewer's claim through step four, making the following findings of facts and conclusions of law with respect to Ms. Brewer:

> 1. "[Ms. Brewer] meets the insured status requirements of the Social Security Act through December 31, 2011." (Tr. 34.)
> 2. "It was previously found that [Ms. Brewer] is the unmarried widow of the deceased insured worker and has attained the age of 50. [Ms. Brewer] met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act." (*Id.*)
> 3. "The prescribed period ends on October 31, 2011." (*Id.*)

4. "[Ms. Brewer] has not engaged in substantial gainful activity since January 10, 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq.*)." (Tr. 35.)
5. "[Ms. Brewer] has the following severe impairments: history of transient ischemic attacks, status-post patent foramen ovale closure; osteoarthritis of the knees, status-post left total knee arthroplasty; obesity (20 C.F.R. 404.1520(c))." (*Id.*)
6. "[Ms. Brewer] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526)." (Tr. 38.)
7. "After careful consideration of the entire record, the [ALJ] finds that since the alleged onset date [Ms. Brewer] has had the residual functional capacity to perform the full range of light skilled work as defined in 20 C.F.R. 404.1567(b)." (*Id.*)
8. "[Ms. Brewer] is capable of performing her past relevant work as a Salesclerk, DOT 261.357-062, light, SVP 4–6. This work does not require the performance of work-related activities precluded by [Ms. Brewer's] residual functional capacity (20 C.F.R. 404.1565)." (Tr. 40.)
9. "[Ms. Brewer] has not been under a disability, as defined in the Social Security Act, from January 10, 2008, through the date of this decision (20 C.F.R. 404.1520(f))." (Tr. 41.)

In summation, the ALJ concluded Ms. Brewer did not possess an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, that she had the RFC to perform the full range of light semi-skilled and skilled work, and that she did not qualify as disabled as defined in the Act from January 10, 2008, the alleged onset date, through the date of the ALJ's decision. (Tr. 38–41.)

In support of her claim that this Court should reverse the Commissioner's decision, Ms. Brewer argues that: (1) the ALJ erred by misconstruing the testimony of the vocational expert; (2) the ALJ's analysis failed to meet legal requirements for evaluation of past work; (3) the ALJ's determination of Ms. Brewer's RFC is not supported by substantial evidence; and (4) the Court should award benefits in order to avoid lengthening the process by remanding the case. (Pl.'s Opening Br. 7, ECF No. 14.) The Court addresses each argument in turn.

## I. Testimony of the Vocational Expert

Ms. Brewer argues the ALJ misconstrued the testimony of the vocational expert in deciding she could perform her past relevant work. She cites the transcript of the hearing, where the ALJ described a hypothetical individual similar to Ms. Brewer in terms of work and movement abilities. After describing this hypothetical individual, the ALJ asked the vocational expert if this individual could perform Ms. Brewer's past relevant work, and the vocational expert answered he or she could not. (ECF No. 14 at 8–10 & Tr. 69–71.) The ALJ's decision stated the vocational expert believed someone capable of this significant range of light work could perform Ms. Brewer's past relevant work. (Tr. 41.)

The ALJ's decision does not rely solely on this hypothetical, and the final RFC finding differs from the hypothetical Plaintiff described to the vocational expert. (Tr. 38–41, 69–70.) The hypothetical posed to the vocational expert did not match the ALJ's final determination of impairments. Therefore, the opinion of the vocational expert does not bind the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Whether the ALJ misconstrued the vocational expert's testimony, the Decision does not rely on it to the extent this Court can find a reversible error.

The Court does agree the ALJ misconstrued the vocational expert's testimony by stating the vocational expert determined Ms. Brewer could perform her past relevant work. Nonetheless, the Court finds this error harmless because it does not affect the overall ruling that Ms. Brewer does not qualify for DIB. A harmless error is one "minor enough not to undermine confidence in the determination of th[e] case." *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993). *See also Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (explaining where a vocational expert reviews the record and testimony, an incongruent hypothetical has a

minimal effect on the case). Because the ALJ had substantial evidence on which to base the credibility finding, the Court determines that misconstruing the vocational expert's testimony constitutes a harmless error that did not affect the outcome of the case.

## II. Light Work Finding

Next, Ms. Brewer argues the ALJ erred in finding she could perform the full range of light work because the law requires a specific assessment of her capability on a function-by-function basis, rather than in broad categories. She argues because the ALJ did not compare her specific limitations with the precise requirements of her past relevant work, substantial evidence did not exist to support the decision that she could perform light work. (ECF No. 14 at 10–11.) The ALJ gave substantial weight to Dr. Burkett's findings, which Dr. Peterson affirmed. (Tr. 40, 318–25, 368.) Dr. Burkett's opinion addresses Ms. Brewer's capabilities in relation to all six strength demands. (Tr. 319–22.) The ALJ did not adopt one of these six findings: the ALJ determined no record evidence showed Ms. Brewer could not climb, as found by Dr. Burkett. (Tr. 40.) Rather, Ms. Brewer acknowledged her ability to climb stairs. (Tr. 374) These capabilities correspond to a finding that Ms. Brewer could perform light work, defined by the conclusions of the reviewing state agency physicians.

The ALJ's findings in the Decision match the definition of light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . a good deal of walking or standing, or. . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 CFR § 404.1567(b). The ALJ found Ms. Brewer can do her prior relevant work, specifically that she can lift 10 pounds frequently

and 20 pounds occasionally.[3] (Tr. 41.) Ms. Brewer's limitations, as determined by Dr. Burkett, on lifting do not differ from the definition of light work. Dr. Burkett addresses the limitations on bending, stooping, twisting, squatting, kneeling, crawling, and crouching in the physical RFC assessment. (Tr. 320.) The ALJ adopted the findings of Dr. Burkett's entire report, excluding the exceptions noted in the Decision. (Tr. 40.) Only Ms. Brewer's testimony contradicts this report, but the ALJ found that testimony not credible. (Tr. 39.) The ALJ weighed all of the medical source opinions of record available, which all support the finding that Ms. Brewer can perform a full range of light work.

The ALJ must evaluate a plaintiff's ability to return to work using a three-phase process during the step four determination.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). After determining the RFC, the ALJ described the past relevant work requirements. The past relevant work constitutes light work and directly matches each requirement of that job with Ms. Brewer's RFC. (Tr. 41.) The past relevant work as performed, according to Ms. Brewer's testimony, did not require lifting more than ten pounds. The ALJ noted this fact in determining Ms. Brewer can do her past relevant work, stating this level of lifting falls below the level required for a full range of light work. (Tr. 40–41.) The Decision also uses the Work History Report to show that Ms.

---

[3] The exact text of the Decision reads "lifting only 10 pounds frequently and 10 pounds occasionally." Based on the analysis of the Decision and the earlier definition of light work, the Court understands that the Decision contains a typographical error and meant the second "10" to be a "20".

Brewer's past relevant work (as she describes it) only required being on her feet about five hours, not more as she contends in her brief. (Tr. 41, 218 & ECF No. 14 at 13.) The Court determines that the ALJ's analysis properly follows the *Winfrey* test, and substantial evidence supports the ALJ's findings.

The Court does not consider the evidence submitted after the Decision to the Appeals Council. Ms. Brewer may submit new and material evidence related to the period on or before the date of the ALJ's hearing decision. *See* 20 C.F.R. 404.970(b). The Court finds the Appeals Council's reasoning on this issue persuasive and agrees the evidence does not materially change the decision. (Tr. 1–2.) "The Appeals Council must consider evidence submitted with a request for review if additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart* 389 F.3d 1139, 1142 (10th Cir. 2004) (internal quotations omitted); *see also O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The evidence provided to the Appeals Council met these guidelines but did not change the weight of the evidence. Because the Appeals Council determined this evidence did not show a period of twelve months of disability, the Court declines to use it as a basis for changing the ALJ's decision. Therefore, the Court recommends the District Court uphold the ALJ's finding that Ms. Brewer can perform a full range of light work because substantial evidence supports this decision.

### III.    Residual Functional Capacity

Ms. Brewer also argues that substantial evidence does not support the ALJ's RFC finding, because the definition of "light work" does not match the hypothetical limited plaintiff the ALJ described to the vocational expert. She contends that the ALJ failed to address limitations in bending, stooping, twisting, squatting, kneeling, crawling, and crouching, as well

13

as her limitations in lifting more than ten pounds. The ALJ did not include a discussion of her need to change postures every fifteen minutes, the pain she experiences, or her second knee replacement on August 17, 2010. (ECF No. 14 at 12–13.) The Court has addressed the evidence concerning Ms. Brewer's second knee replacement and found it would not change the decision.

Because substantial evidence supports a finding of Ms. Brewer's reduced credibility, the ALJ determined the RFC should follow closely with Dr. Burkett's recommendations. The Court finds substantial evidence supports this finding of reduced credibility and declines to overrule the finding. When evaluating credibility, the ALJ must follow the prescribed two-step process: (1) evaluate whether the claimant has an underlying medically determinable impairment one could reasonably expect to produce the claimant's pain or other symptoms; and (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which these impairments limit the claimant's functioning. *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). "'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz*, 898 F.2d at 777). The ALJ must cite specific evidence used in evaluating a claimant's subjective complaints, and if he finds those complaints incredible, he must explain why. *See id.* But this analysis "does not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, [the credibility determination requisites] are satisfied." *Id.*

The ALJ found much of Ms. Brewer's testimony not credible and did not use it to determine the RFC. In considering the first factor of the test, the ALJ concluded that one could expect the medically determinable impairments to cause the alleged symptoms. (Tr. 39.)

14

However, the ALJ found Ms. Brewer failed the second factor because the evidence did not support her testimony on subjective symptoms and limitations. (*Id.*) The Decision supports this credibility determination with several findings of fact, including her reported daily activities, a lack of visits to the doctor for pain, findings of no pain from doctors, and failure to follow through with treatment. (Tr. 39–40.) These factors indicate an inconsistency between Ms. Brewer's testimony concerning pain and the record evidence. The Court finds these factors acceptable in determining the Plaintiff's credibility. *Luna*, 834 F.2d at 165–66 ; *see also* 42 U.S.C. § 423(d)(5) (1999). Ms. Brewer asks the Court to reconsider the credibility finding and reweigh the facts, which the Court cannot and will not do. (ECF No. 14 at 14–15.)

## IV.     Awarding Benefits

Finally, Ms. Brewer argues that if the Court finds in her favor, then it should reverse the Decision and award benefits, rather than remand the case for further fact-finding. (ECF No. 14 at 17–18.) Because the Court agrees with the ALJ that Ms. Brewer has not met the initial burden to show a disability, this argument fails.

## CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS the District Court AFFIRM the Commissioner's decision not to award Social Security benefits.

The Court will send copies of this Report and Recommendation to the parties, and notifies them of their right to object to the same. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). The Court further notifies the parties they must file any objection to this Report and Recommendation with the clerk of the court within fourteen (14) days after being served with a copy thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 5th day of August, 2013.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge